# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

# NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA WECKWERTH, PATRICIA CRUZ, MICHELLE FALK, CYNTHIA GARRISON, INDHU JAYAVELU, MICHAEL KNOTTS, WALDO LEYVA, AMANDA MACRI, DANIELLE TROTTER, AND PAMELA PRITCHETT, individually, and on behalf of a class of similarly situated individuals, <br><br>      PLAINTIFFS, <br> v. <br><br> NISSAN NORTH AMERICA, INC. <br><br>      DEFENDANT. | **Case No. 3:18-cv-00588** <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Alistair E. Newbern |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................. 1

II.    FACTS AND PROCEDURE ................................................................................................. 2

       A.     Overview of the Litigation ................................................................................. 2

              1.     Falk v. Nissan North America, Inc. .................................................. 2

              2.     Pamela Pritchett, et al. v. Nissan North America, Inc. ................. 4

              3.     Norman v. Nissan North America, Inc. ........................................... 5

              4.     Knotts v. Nissan North America, Inc. .............................................. 5

       B.     Plaintiffs Engaged in Extensive Investigation and Discovery ........................ 6

       C.     Mediation and Settlement ................................................................................. 7

III.   PRINCIPAL TERMS OF THE SETTLEMENT ................................................................ 8

       A.     Conditional Certification of a Nationwide Class for Purposes of Settlement .......... 8

       B.     Extended Warranty ............................................................................................ 8

       C.     Reimbursement for Out-of-Pocket Costs ........................................................ 9

       D.     Voucher Payments ............................................................................................. 9

       E.     Attorneys' Fees and Costs ............................................................................... 10

       F.     Class Representative Service Awards ............................................................. 10

       G.     Release of Claims ............................................................................................. 10

IV.    ARGUMENT ...................................................................................................................... 11

       A.     The Court Should Provisionally Certify a Settlement Class Pursuant to
              Federal Rule of Civil Procedure 23 ................................................................ 11

       B.     Rule 23(a)'s Requirements are Satisfied. ...................................................... 12

              1.     The Settlement Class Is Sufficiently Numerous ........................... 12

              2.     There are Questions of Law and Fact that Are Common to the
                     Settlement Class ................................................................................ 12

              3.     Plaintiffs' Claims Are Typical of Those of the Settlement Class ...... 13

              4.     Plaintiffs and Class Counsel Will Adequately Represent Class
                     Members ............................................................................................. 14

       C.     Rule 23(b)(3)'s Requirements are Satisfied. ................................................. 15

              1.     Common Issues of Law and Fact Predominate Over Individual
                     Issues .................................................................................................. 15

              2.     Class-wide Resolution Is Superior to Separate Individual Actions ...... 16

i

D.     The Court Should Appoint the Proposed Class Counsel ....................................................17

E.     The Court Should Preliminarily Approve the Class Action Settlement.........................17

     1.     The Settlement is the Result of Serious, Arm's-Length, Informed Negotiations .........................................................................................................19

     2.     Adequate Representation by Class Representative and Class Counsel.........................................................................................................20

     3.     The Proposed Settlement Relief Treats Class Members Equitably and There Are No Obvious Deficiencies with the Settlement ..........................21

     4.     The Relief Provided by The Settlement Is Reasonable and Adequate In View of the Complexity, Risks, Expense, and Likely Duration of the Litigation ........................................................................21

     5.     Attorneys' Fees Are Reasonable ........................................................................24

     6.     Class Members are Treated Equitably in the Settlement. ...................................24

     7.     The Proposed Settlement Notices are Fair and the Court Should Authorize Their Dissemination..........................................................................25

V.     CONCLUSION ..................................................................................................................27

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 14

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) .................................... 11

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, (6th Cir. 1990) .............................................. 18

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................................................ 14

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) .................................................................... 20

*Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998) ....................... 18

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) ................................................. 12

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ........................................................................ 15

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................ 17

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ..................................................... 16

*Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir. 2002) ......................... 11, 15

*Craft v. Vanderbilt Univ.*, 174 F.R.D. 396 (M.D. Tenn. 1996) ..................................................... 13

*Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 43900 (C.D. Cal. Jan. 30, 2014) ......................... 22

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 37 F.R.D. 240 (S.D. Ohio 1991) ................ 19

*Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), aff'd, 822 F.3d 269 (6th Cir. 2016) ................................................. 11

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................................. 17

*Gen. Telephone Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ........................................... 12

*Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) .............................................. 14

*In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ...................................................... 12

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ........... 19

*In re Media Cent., Inc.*, 190 B.R. 316 (E.D. Tenn. 1994) ............................................................. 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No.

05MD1720MKBJO, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019).........................................19

*In re Seitel, Inc. Securities*, 245 F.R.D. 263 (S.D. Tex. 2007)................................................14

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-4, 2015 WL 13650515 (E.D. Tenn. Jan. 16, 2015)..................................................................................................19

*In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692 (E.D. Tenn. June 15, 2012).........................................................................................................20

*In re Whirlpool Front-Loading Washers Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)....................15

*Kizer v. Summit Partners, L.P.*, No. 1:11-CV-38, 2012 WL 1598066 (E.D. Tenn. May 7, 2012)........................................................................................................................18

*Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426 (C.D. Cal. July 7, 2015).....................................22

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012)..............................................15

*Manners v. Am. Gen. Life Ins. Co.*, No. CIV. A. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999).................................................................................................16

*Manners v. Am. Gen. Life Ins. Co.*, No. CIV.A. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999).................................................................................................22

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012).............................................23

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)......................................25

*MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal., Mar. 28, 2019).......................................................................................................19

*Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015).....................................14

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir.1976).................................................12

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988)............................................13

*Tucker v. Union Underwear Co.*, 144 F.R.D. 325 (W.D. Ky. 1992).........................................13

*U.S. v. State of Tennessee*, 256 F. Supp. 2d 768 (W.D. Tenn. 2003).........................................19

*Wal-Mart Stores v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)..............................12

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)..............................................17, 18, 19

**STATE CASES**

*Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (PA. 2011)..........................................24

iv

*FEDERAL STATUTES*

Fed. R. Civ. P. 23(a) ...................................................................................................................12

Fed. R. Civ. P. 23(a)(1) ..............................................................................................................12

Fed. R. Civ. P. 23(a)(2) ..............................................................................................................12

Fed. R. Civ. P. 23(a)(3) ..............................................................................................................13

Fed. R. Civ. P. 23(a)(4) ..............................................................................................................14

Fed. R. Civ. P. 23(b)(3) ........................................................................................................ 15, 16

Fed. R. Civ. P. 23(e) ...................................................................................................................18

Fed. R. Civ. P. 23(e)(1)(B)(i–ii) .................................................................................................18

Fed. R. Civ. P. 23(e)(2) ..............................................................................................................19

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................................21

Fed. R. Civ. P. 23(g)(1)(A). .......................................................................................................17


*SECONDARY AUTHORITIES*

5 James Wm. Moore et al., Moore's Federal Practice  (3d ed. 1999) ........................................13

H. Newberg & A. Conte, 1 Newberg on Class Actions  (3d ed. 1992) ......................................13

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (3d ed.1992) ..........................12

Manual for Complex Litigation, Third, § 30.42 .........................................................................20

## I.    INTRODUCTION

Patricia Cruz, Michelle Falk, Cynthia Garrison, Indhu Jayavelu, Michael Knotts, Waldo Leyva, Amanda Macri, Danielle Trotter, Patricia Weckwerth, and Pamela Pritchett ("Plaintiffs") belong to a proposed nationwide class of approximately 1.4 million current and former owners and lessees of 2013-2017 Nissan Sentra, 2014-2017 Nissan Versa Note, and 2012-2017 Nissan Versa vehicles equipped with a type of transmission known as a Continuously Variable Transmission or "CVT" ("Class Vehicles"). They allege that the CVT transmissions in the Class Vehicles cause the vehicles to shudder, judder, hesitate, fail to accelerate and abruptly decelerate, creating an unreasonable safety risk and requiring the transmission to be replaced prematurely (these allegations are collectively referred to as the "Alleged CVT Failures"). Nissan denies these allegations.

Plaintiffs' proposed global settlement with Nissan North America, Inc. ("Nissan") is intended to provide Class Members with immediate and valuable relief for the Alleged CVT Failures. These benefits primarily take the form of: (1) a warranty extension on all Class Vehicles, (2) full or partial reimbursement for out-of-pocket expenses related to replacement or repair of the CVT transmissions for qualifying Class Members if the repairs are done within the Warranty Extension Period, and (3) a voucher for certain former owners toward the purchase or lease of new Nissan or Infiniti vehicles.

Plaintiffs and their counsel believe the Settlement is fair, reasonable and adequate, providing Class Members with similar, if not superior, remedies to what they could otherwise have expected to receive were the cases successfully tried, but without the delay and risks associated with continued litigation and trial. Notably, Nissan's financial obligations to the Class under the Extended Warranty are not capped, and thus there is no risk as with other settlements of a fixed settlement fund being exhausted. Moreover, the Extended Warranty and "pay-as-you-go" nature of the Settlement alleviates any distribution problems.

Plaintiffs accordingly request that this Court review their negotiated Settlement Agreement,[1] attached as Exhibit 2 to the accompanying Declaration of Cody R. Padgett ("Padgett Decl."), and enter an

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same definition as those defined by the Settlement Agreement.

1

order: (1) granting preliminary approval of the Settlement and finding that it warrants sending notice to the Settlement Class; (2) certifying a class for settlement purposes and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel, Whitfield, Bryson & Mason, LLP; Berger Montague ; Capstone Law APC; Heninger Garrison Davis, LLC; Shepherd, Finkelman, Miller & Shah, LLP; and Pearson, Simon & Warshaw, LLP as Class Counsel; (3) approving the Parties' proposed form and method of giving Class Members notice of the action and proposed Settlement; (4) directing that notice be given to Class Members in the proposed form and manner; and (5) setting a hearing on whether the Court should grant final approval of the Settlement, enter judgment, award attorneys' fees and expenses to Plaintiffs' counsel, and grant service awards to Plaintiffs.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

The Parties' global settlement will resolve the claims bought by Plaintiffs in separate, but related, class actions against Nissan stemming from the manufacture of the allegedly defective CVT Transmission in the Class Vehicles. These actions are: (1) *Falk v. Nissan North America, Inc.*, No. 4:17-cv-04871 (N.D. Cal.); (2) *Knotts v. Nissan North America, Inc.*, No. 17-cv-05049 (D. Minn); and (3) *Norman v. Nissan North America, Inc. and Nissan Motor Co., Ltd.*, No. 3:18-cv-00588 (M.D. Tenn) (collectively, "Nissan CVT Litigation"). The named Plaintiffs in the *Falk and Knotts* cases are being added to the instant *Norman*[2] case, No. 3:18-cv-00588, via the First Amended Complaint which is being filed contemporaneously with this Motion for Preliminary Approval.   A brief overview of the Nissan CVT Litigation is provided below.

### 1.    Falk v. Nissan North America, Inc.

On August 22, 2017, Plaintiffs Michelle Falk, Indhu Jayavelu, Patricia L. Cruz, Danielle Trotter, and Amanda Macri, (representing the states of California, Ohio, New York, Colorado, and Illinois, respectively, and a nationwide class) (collectively, "Falk Plaintiffs") filed the *Falk v Nissan North America,*

---

[2] The instant case formerly included both a Plaintiff with a Nissan Versa vehicle *and* Plaintiffs with Nissan Juke vehicles. Because the Nissan Juke claims are being settled in a separate action, the Plaintiffs with Nissan Juke vehicles, Cheyne Norman and Sophia Wescott, have been deleted from the operative complaint in the instant action and have appeared in Case No. 3:18-cv-00543 (formerly known as the *Madrid v. Nissan* action), where the Nissan Juke claims are being presented for settlement approval.

2

*Inc.*, action in the United States District Court for the Northern District of California on August 22, 2017. (Declaration of Lawrence Deutsch ("Deutsch Decl.").) At issue in the *Falk* action are 2012-2017 Nissan Sentra vehicles.

On August 22, 2017, Nissan moved to dismiss the *Falk* action. *Id.* at ¶ 5. In response, the Falk Plaintiffs filed a First Amended Complaint on September 28, 2017, adding a sixth named plaintiff, Cynthia Garrison, and a Massachusetts sub-class. *Id.* On October 26, 2017, Nissan filed a motion to dismiss some, but not all, of the Falk Plaintiffs' fifteen causes of action. *Id.* Specifically, Nissan did not move to dismiss Plaintiffs Falk's and Garrison's breach of implied warranty claims under California and Massachusetts law, Plaintiff Falk's California consumer protection claims, and Plaintiff Macri's Illinois consumer protection claims.[3] *Id.*

Following full briefing and argument by the parties, the court denied, in part, and granted, in part, Nissan's motion to dismiss on May 26, 2018. *Id.* at ¶ 6. Specifically, the court denied Nissan's motion to dismiss the Falk Plaintiffs' express and implied warranty claims and Magnuson-Moss Warranty Act claims. The court granted Nissan's motion to dismiss Plaintiff Macri's implied warranty claim under Illinois law and Plaintiff Jayavelu's implied warranty claim under Ohio law. *Id.* The court also denied Nissan's motion to dismiss Plaintiffs' state consumer protection statute claims, except Plaintiff Jayavelu's Ohio Consumer Sales Practices Act claim. *Id.* Finally, the court denied Nissan's motion to dismiss the Falk Plaintiffs' claims for declaratory relief but granted its motion to dismiss their unjust enrichment claims and claims for equitable relief. *Id.*

Following the May 26, 2018 Motion to Dismiss Order, the Falk Plaintiffs conducted eight meet and confer teleconferences with Nissan regarding Nissan's ESI obligations and negotiated agreements with

---

[3] The Falk Plaintiffs pressed discovery while the first Motion to Dismiss was pending. On February 23, 2018, they served fifty-three Requests for Production seeking emails among Nissan employees, emails between Nissan North America and Nissan Japan, and emails between Nissan and its transmission supplier, JATCO, regarding the transmission problems that Nissan itself identified and memorialized in its TSBs. Nissan served its responses on May 2, 2018. On May 25, 2018, Nissan served Plaintiffs Macri, Garrison, Trotter, Jayavelu, Falk, and Cruz with forty-two Requests for Production and eighteen interrogatories, each. The Plaintiffs served their responses on August 24, 2018. *Id.* at ¶ 7.

3

respect to custodial email searches and ESI searches of several additional databases. They also drafted and served a Motion to Compel further responses to twenty-six (26) of Plaintiffs' Requests for Production. Ultimately, Nissan agreed to conduct searches of several databases, including custodial email searches, and to produce further responsive documents.

On June 6, 2018, the Falk Plaintiffs filed their Second Amended Complaint adding Plaintiff Leyva, who had filed an overlapping complaint on September 11, 2017 in the United States District Court for the Central District of California entitled *Leyva v. Nissan North America, Inc.*, Case No. 5:17-cv-01870 FMO. *Id.* Leyva voluntarily dismissed that action to join the *Falk* case, following an agreement between the plaintiffs in both cases, so as to minimize duplication of expense and effort. *Id.* at ¶ 9. The Second Amended Complaint also included amended allegations for Plaintiff Jayavelu's Ohio Consumer Sales Practices Act and implied warranty claims. *Id.*

On July 6, 2018, Nissan filed a motion to dismiss the SAC. *Id.* at ¶ 10. That motion was fully-briefed by the parties when the settlement was negotiated. *Id.*

### 2. Pamela Pritchett, et al. v. Nissan North America, Inc.

Plaintiffs commenced their action on October 27, 2017 in the United States District Court for the Middle District of Alabama. (Declaration of Taylor Bartlett ("Bartlett Decl.").)

On December 13, 2017, Nissan moved to Strike or Dismiss the Class Definitions and moved to Dismiss the Complaint. *Id.* On January 3, 2018, Plaintiffs filed their First Amended Complaint which added two Plaintiffs: Lakeland Atlantic Driving School and Marco Lashin (who own a 2014 Nissan Versa Note). *Id.* at ¶ 6. On February 12, 2018, Nissan renewed its Motion to Strike and Dismiss. *Id.*

On March 5, 2018, the parties submitted a Joint Motion of Stipulated Protective Order which was granted on March 6, 2018. *Id.* On March 7, 2018, Plaintiffs opposed Nissan's pending Motions. *Id.* On March 21, 2018, Nissan replied in support of its Motions. *Id.* On March 28, 2018, Plaintiffs moved for leave to file a Sur-Reply in Opposition to Nissan's Motion which was granted on April 4, 2018. On September 24, 2018, Plaintiffs Atlantic Driving School and Marco Lashin dismissed their claims without prejudice. *Id.* Finally, on November 28, 2018, Plaintiffs filed a notice of supplemental authority which supported their Opposition to Nissan's Motions. *Id.* Nissan's Motions were fully briefed and before the court when the

4

parties negotiated this settlement. *Id.*

### 3. Norman v. Nissan North America, Inc.

Plaintiffs Cheyne Norman, Patricia Weckwerth, and Sophia Wescott (collectively, "Norman Plaintiffs") filed suit against Nissan North America, Inc., (the United States subsidiary) and Nissan Motor Co., Ltd. (the Japanese parent company) in the Middle District of Tennessee on June 26, 2018 on behalf of themselves and other persons who purchased or leased any 2013-2017 Nissan Versa, Versa Note or Juke equipped with an Xtronic CVT. (Padgett Decl. ¶ 14.) The Parties negotiated a discovery and tolling agreement whereby Nissan Japan agreed to be subject to discovery in exchange for a dismissal without prejudice. *Id.*

After entering into a stipulation setting a briefing schedule and extending the deadline for Defendant to respond, Nissan filed its motion to dismiss Plaintiffs' complaint on August 29, 2018.[4] *Id.* at ¶ 15. The Norman Plaintiffs filed their opposition on September 27, 2018, and Nissan filed its reply on October 18, 2018. *Id.* The motion was under submission when the parties negotiated this settlement. *Id.*

The parties had also engaged in discovery prior to reaching a settlement in this action. On September 12, 2018, the Norman Plaintiffs served Plaintiffs' First Request for Production of Documents, to which Defendant Nissan responded on November 12, 2018. Defendant Nissan produced thousands of pages of documents in response, including more than 10,000 pages of confidential documents. *Id.* at ¶ 16.

On October 16, 2018, Defendant Nissan propounded its First Set of Interrogatories and First Set of Requests for Production to each of Plaintiff Sophia Wescott, Cheyne Norman and Patricia Weckwerth. Plaintiffs responded to each of these requests on December 7, 2018. *Id.* at ¶ 17.

### 4. Knotts v. Nissan North America, Inc.

Plaintiff Knotts commenced his action in the District of Minnesota on November 7, 2017, on behalf of a class of owners and lessees of 2012 and 2013 Nissan Versa vehicles, alleging violations of the

---

[4] Concurrent with briefing the Motion to Dismiss, the Parties jointly filed a Proposed Initial Case Management Order (Dkt. 53) setting the case schedule, and an agreed upon protective order (Dkt. 61) setting the parameters of confidential discovery materials. The parties had extensive negotiations regarding, and ultimately agreed upon, an ESI protocol.

5

Minnesota Consumer Fraud Statutes as well as for breach of express and implied warranty. (Declaration of Melissa S. Weiner ("Weiner Decl.").) On January 5, 2018, Nissan filed a Motion to Dismiss and Motion to Strike or Dismiss the Class Allegations ("Motions"). Plaintiff Knotts filed his Opposition to the Motions on February 14, 2018, and Nissan filed its Replies in support of the Motions on February 27, 2018. *Id.* The Court held oral argument on the Motions on March 30, 2018. *Id.* On October 10, 2018, the Court issued a decision granting in part and denying in part the Motion to Dismiss and denying, in its entirety, the Motion to Strike or Dismiss Class Allegations. *Id.* Specifically, the Court permitted the following claims to proceed: (1) breach of implied warranty; (2) unjust enrichment; and (3) claim under the Minnesota Consumer Fraud Statutes, specifically, Minnesota Deceptive Trade Practices Act. Minn. Stat. § 325D.44 et seq., deceptive trade practices, (injunctive relief and attorneys' fees); and Minn. Stat. § 325F.68 et seq., prevention of consumer fraud (damages, injunctive relief, and attorneys' fees); *Id.* Additionally, the Court granted Knotts leave to amend his claims asserted under the Minnesota False Advertising Statute ("MFAS"), which he elected to do by filing an Amended Complaint on November 9, 2018. *Id.*

The parties negotiated and entered into a protective order in January 2019 (Dkt. 55). Nissan then moved to dismiss the amended MFAS claim, which motion was fully briefed and argued on February 6, 2019. *Id.* at ¶ 8. The court took the motion under advisement and has not yet issued a ruling. *Id.* The parties also engaged in discovery prior to reaching a settlement in this action. Plaintiffs received and reviewed over 10,000 pages of discovery documents and data and were in the process of negotiating a discovery schedule when the settlement agreement was reached.

### B. Plaintiffs Engaged in Extensive Investigation and Discovery

Both before and after these actions were filed, Plaintiffs thoroughly investigated and researched their claims, which allowed Plaintiffs' Counsel to better evaluate Plaintiffs' claims regarding Nissan's alleged representations and omissions concerning the functioning of the CVTs. (*See, generally,* Padgett Decl., Deutsch Decl., Mason Decl., Finkelman Decl., Weiner Decl., and Bartlett Decl.) Among other tasks, Plaintiffs fielded hundreds of inquiries from putative Class Members and investigated many of their reported claims. *Id.* They consulted and retained expert William Mark McVea, a mechanical engineering expert specializing in power transmission devices. Plaintiffs also researched publicly available materials and

information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the CVTs. *Id.* They reviewed and researched consumer complaints and discussions of transmission problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect. *Id.* Finally, they conducted research into the various causes of action and other similar automotive actions. *Id.*

Furthermore, Plaintiffs propounded discovery on Nissan in each of the four cases resolved pursuant to the Settlement, including conducting eight meet and confer conferences and serving a Motion to Compel. In response, Nissan produced over 17,000 pages of documents, including spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, design documents (*e.g.*, technical drawings), internal Nissan project files with tests, investigation reports, countermeasure evaluations, technical service bulletins ("TSBs"), field reports, warranty data, and internal Nissan emails regarding the Alleged CVT Failures. *Id.*

In reviewing this discovery, Plaintiffs identified information that was instrumental to the case and to Plaintiffs' efforts during mediation. Finally, over the course of litigation, Plaintiffs responded to hundreds of Class Members who contacted Plaintiffs' Counsel to report problems with their Class Vehicles and seek relief. Certain of Plaintiffs' cars were physically inspected during the discovery process. Plaintiffs' Counsel also conducted detailed interviews with Class Members regarding their pre-purchase research, their purchasing decisions, and their repair histories, and developed a plan for litigation and settlement based in part on Class Members' reported experiences with their Class Vehicles and with Nissan dealers. *Id.*

### C.     Mediation and Settlement

Following the above motion practice and the exchange of thousands of pages of documents and data, on February 19, 2019, counsel for Plaintiffs and Defendant participated in an all-day mediation before Mr. Hunter R. Hughes III, an experienced mediator, in Atlanta, Georgia.

Although the Parties did not settle at the first mediation session, the Parties continued their settlement negotiations telephonically with the assistance of the mediator. On April 9, 2019, the Parties conducted a second in-person all-day face-to-face negotiation in Chicago, Illinois. At the close of this second session, the Parties had agreed on the principal terms of the proposed class relief. Further evolution

7

of the settlement terms took place in conjunction with the negotiations of the related cases concerning Nissan Altima's CVT transmissions in front of mediator Hughes in Atlanta, Georgia, later in April. After the Parties had agreed on the framework and material terms for settlement in Chicago, they began negotiating through telephonic conferences, via email, and with the assistance of Mr. Hughes, and ultimately agreed upon an appropriate request for service awards and Plaintiffs' attorneys' fees and expenses. In May 2019, the Parties finally were able to document the formal terms of their agreement to resolve the litigation. All of the terms of the Settlement are the result of extensive, adversarial, and arms' length negotiations between experienced counsel for both sides.

## III.    PRINCIPAL TERMS OF THE SETTLEMENT

The Settlement confers significant and practical benefits to current and former owners and lessees of the Class Vehicles which were sold in the United States. The principal terms of the Settlement are as follows:

### A.    Conditional Certification of a Nationwide Class for Purposes of Settlement

The Settlement Class consists of all current and former owners and lessees who purchased or leased within the United States or its territories of the following vehicles equipped with CVTs: (i) 2013-2017 Nissan Sentra vehicles; (ii) 2014-2017 Nissan Versa Note vehicles; and (iii) 2012-2017 Nissan Versa vehicles. (Settlement Agreement ¶¶ 10, 37.) Excluded from the Settlement Class are (1) those who make a valid and timely request for exclusion from the Settlement Class (2) Nissan, any entity or division in which Nissan has a controlling interest, its/their legal representatives, officers, directors, assigns and successors; (3) any judge to whom this case is assigned and the judge's clerks and any member of the judge's immediate family, and the Sixth Circuit Court of Appeals; and (4) government purchasers and lessees.

### B.    Extended Warranty

For all current owners and lessees of Class Vehicles, Nissan agrees to extend the time and mileage durational limits for powertrain coverage under the applicable New Vehicle Limited Warranty for Class Vehicles, to the extent it applies to the transmission assembly and ATCU, by 24 months or 24,000 miles, whichever occurs first ("Extended Warranty"), after the original powertrain coverage in the New Vehicle Limited Warranty (60 months or 60,000 miles, whichever occurs first) has expired. (Settlement Agreement

8

¶¶ 42, 43.) The Extended Warranty will be subject to the terms and conditions of the original Nissan New Vehicle Limited Warranty. (Settlement Agreement ¶ 56.) Notably, Nissan's financial obligations to the Class under the Extended Warranty are not capped; how much Nissan will pay for warranty repairs will depend on the extent to which Class Members experience problems with their CVTs going forward.

### C. Reimbursement for Out-of-Pocket Costs

Nissan will reimburse Class Members for the portion of the costs for parts and labor actually paid by the Class Member for replacement of, or repairs to, the transmission assembly or automatic transmission control unit ("ATCU") if the repairs were made after the expiration of the original warranty but within the durational limits of the new Extended Warranty. Parts and labor actually paid by the Class Member will be reimbursed 100% if the repair was performed by an authorized Nissan dealer (Settlement Agreement ¶ 57(A)) and up to a cap of $4,750 if the repair was performed by a non-Nissan automotive repair facility. (Settlement Agreement ¶ 57(B)).

To be eligible for reimbursement, Class Members will be required to submit a claim and appropriate documentation, created at or near the time of the qualifying repair or replacement and as part of the same transaction, establishing that that they have paid for repairs and/or replacement of the transmission assembly or ATCU. (Settlement Agreement ¶ 58.)

The Settlement also provides relief to Class Members who did not pay for a transmission repair within the Warranty Extension Period, but who present to the Settlement Administrator Appropriate Contemporaneous Documentation of a Nissan Diagnosis establishing that a Nissan dealer, within the Warranty Extension Period, diagnosed and recommended a repair to the transmission assembly or ATCU of the Class Vehicle. In this scenario, the Class Member is entitled to reimbursement (subject to the $5,000 cap mentioned above for repairs by a non-Nissan automotive repair facility) if the Class Member provides the appropriate documentation that he or she obtained the recommended repair or replacement within ninety (90) days of the Notice Date and prior to the Class Vehicle exceeding 90,000 miles, whichever occurs first. (Settlement Agreement ¶ 58.)

### D. Voucher Payments

For former owners of Class Vehicles, Nissan will issue a $1,000 voucher toward the purchase or

9

lease of a single Nissan or Infiniti vehicle per Class Vehicle that had two or more replacements or repairs to the transmission assembly (including torque converter and/or valve body) and/or ATCU during the period of their ownership, as reflected by Nissan warranty records. (Settlement Agreement ¶¶ 12, 60.)

No Class Member will be entitled to receive more than 5 vouchers. The voucher must be used within nine months of the Effective Date and is not transferrable. Class Members who are eligible for both reimbursement of out-of-pocket costs and a voucher for the same Class Vehicle must select the remedy they prefer and may not receive both benefits. (Settlement Agreement ¶¶ 62, 63.)

### E.     Attorneys' Fees and Costs

Nissan will not oppose any applications for an award of reasonable attorneys' fees up to $6,500,000 and expenses up to $100,000. (Settlement Agreement ¶ 114.) Notably, the Parties did not negotiate attorneys' fees or expenses until the Parties had reached an agreement on Class relief. (Padgett Decl., ¶ 21, Deutsch Decl., ¶ 13, Mason Decl., ¶ 14, Finkelman Decl., ¶ 10, Weiner Decl., ¶ 10, and Bartlett Decl., ¶ 8.) In addition, the award of fees and expenses does not reduce or otherwise affect the benefits available to Class Members.

Plaintiffs' request for attorneys' fees and costs will be presented to the Court in Plaintiffs' motion for approval of attorneys' fees and expenses. This motion will be filed at least 14 days prior to the deadline for objecting to the proposed settlement.

### F.     Class Representative Service Awards

The proposed Settlement allows Class Counsel to request and Nissan to pay service awards to Patricia Cruz, Michelle Falk, Cynthia Garrison, Indhu Jayavelu, Michael Knotts, Waldo Leyva, Amanda Macri, Danielle Trotter, Patricia Weckwerth, and Pamela Pritchett of up to $5,000, each, for their service on behalf of the Settlement Class. (Settlement Agreement ¶ 114.) Their consent to the Settlement is not conditioned in any manner on the award of a service award or its amount. (Settlement Agreement ¶ 114.) Each of the Class Representatives has given their time and accepted their responsibilities, participating actively in this litigation as required and in a manner beneficial to the Class generally.

### G.     Release of Claims

As part of the consideration for this Settlement Agreement, upon Final Approval, it is agreed that

10

the Plaintiffs and all members of the Class who do not opt out shall be deemed to have released all claims against Nissan and Related Parties based upon or in any way related to transmission design, manufacturing, performance, or repair of Class Vehicles. (Settlement Agreement ¶¶ 34, 35.) Specifically excluded from the release are claims for personal injury, wrongful death, or physical damage to property other than a Class Vehicle or its component parts. (*Id.* at ¶ 16).

The release will not include future claims for breach of the Nissan New Vehicle Limited Warranty as extended pursuant to this Settlement, provided that the claims are based on events that occurred after the Notice Date. These "Future Transmission Claims" will be governed exclusively by an Expedited Resolution Process under the auspices of the Better Business Bureau. (Id. at ¶¶ 17, 20, 105, and Exhibit A.)

The Release is appropriately framed to resolve the claims alleged in the Nissan CVT Litigation during the Class Period and is thus "narrowly tailored" to the facts and allegations at issue. *See Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-00436, 2014 WL 3543819, at *6 (S.D. Ohio July 16, 2014), aff'd, 822 F.3d 269 (6th Cir. 2016) ("There is no question that the settlement in this case provides a greater recovery and the release is narrowly tailored.")

## IV. ARGUMENT

### A. The Court Should Provisionally Certify a Settlement Class Pursuant to Federal Rule of Civil Procedure 23

"In order to obtain class certification, plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Additionally, Plaintiffs "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Id.* Here, Plaintiffs seek class certification under Rule 23(b)(3).

While the class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

11

**B.    Rule 23(a)'s Requirements are Satisfied.**

Rule 23(a) is satisfied where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1.    The Settlement Class Is Sufficiently Numerous

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The reason for the [impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed.1992)). There is not a strict numerical test for determining the impracticability of joinder. *Id.* (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.4 (6th Cir.1976)). Instead, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Telephone Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

Here, the Settlement Class includes all prior and current owners and lessees of 2013-2017 model year Nissan Sentra, 2014-2017 model year Nissan Versa Note, and 2012-2017 model year Nissan Versa vehicles equipped with a CVT sold nationwide. Approximately 1.4 million Class Vehicles were sold in the United States. Accordingly, the class proposed in this case is sufficiently numerous. *See Senter*, 532 F.2d at 523.

### 2.    There are Questions of Law and Fact that Are Common to the Settlement Class

The second requirement of Rule 23(a) is that there should be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2566, 180 L. Ed. 2d 374 (2011); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997), cert. denied, 429 U.S. 870 (1976) (commonality requirement is satisfied when the members of a proposed class share at least one common factual or legal issue); H. Newberg & A. Conte, 1 Newberg on Class Actions § 3.10, at 3–51 to –52 (3d ed.

12

1992); 5 James Wm. Moore et al., Moore's Federal Practice § 23.23 [2] (3d ed. 1999).

"[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

Here, all members of the Settlement Class have purchased or leased Class Vehicles that were manufactured and warrantied by Nissan. All Class Members have claims arising out of the same alleged problems with their CVT transmissions and alleged omissions of material fact and alleged breaches of the same material terms of Nissan's uniform New Vehicle Limited Warranty. As a result, the commonality requirement is satisfied because there are multiple questions of law and fact that are common to the Settlement Class, including:

- Did Class Vehicles suffer from a uniform design defect that causes the CVT to shudder, judder, hesitate, fail to accelerate and abruptly decelerate, requiring the transmission to be replaced prematurely?

- Did Nissan have a duty to disclose this alleged defect to consumers?

- Do Alleged CVT Failures pose an unreasonable safety concern?

### 3. Plaintiffs' Claims Are Typical of Those of the Settlement Class

Under Rule 23(a)(3), the Court must find "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied when the named plaintiff's injuries "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996); accord *Senter*, 532 F.2d at 525 n. 31. Slight factual differences that may exist between the class representatives and other Class Members will not defeat typicality. *See id.*; *see also Tucker v. Union Underwear Co.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992) ("absolute homogeneity" not required).

Here, all Class Representatives purchased a Class Vehicle with the Alleged CVT Failures. Their claims are typical of the Settlement Class for purposes of this settlement because they concern the same alleged product defect, arise from the same legal rights under the same warranty terms, allege the same

13

types of harm, and have the same entitlement to relief.

### 4. Plaintiffs and Class Counsel Will Adequately Represent Class Members

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Sixth Circuit has explained that, while identical interests between the class representative and class are not required, "something stronger than 'shared interests' is necessary." *Id.* Moreover, with respect to class counsel, plaintiff's attorneys should be "qualified, experienced and generally able to conduct the litigation, and [ ] consider whether the class members have interests that are not antagonistic to one another." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562-63 (6th Cir. 2007).

Here, the proposed Class Representatives have and will continue to represent the interests of the class. Each proposed Representative is familiar with the facts and understands the duties and responsibilities required for overseeing the litigation. They each have sought out counsel, participated in the action, provided documents and assisted counsel and represented the class. Each is willing to discharge their duties and pursue justice on a class basis. None have sought preferential treatment, and each has agreed to the Settlement and its terms. And none has conditioned their consent to the Settlement on an incentive payment.

Plaintiffs' counsel is likewise adequate to represent the Class. Plaintiffs and the putative Class are represented by reputable law firms: Whitfield, Bryson & Mason, LLP; Berger Montague; Capstone Law APC; Heninger Garrison Davis, LLC; Shepherd, Finkelman, Miller & Shah, LLP; and Pearson, Simon & Warshaw, LLP. While 'the adequacy of class counsel is presumed' absent contrary evidence, proposed Class Counsel have attached declarations regarding their experience handling class actions, product liability cases, and complex litigation. *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015) (quoting *In re Seitel, Inc. Securities*, 245 F.R.D. 263, 271 (S.D. Tex. 2007)). (*See, generally,* Deutsch Decl., Mason Decl., Padgett Decl., Finkelman Decl., Weiner Decl., and Bartlett Decl.) Proposed Class Counsel are similarly dedicated to prosecuting the case and are committed to fulfilling their duties to the class. There

14

are no conflicts of interest between absent Class Members, named Plaintiffs, and Counsel.

### C. Rule 23(b)(3)'s Requirements are Satisfied.

In addition to the requirements of 23(a), Plaintiffs must satisfy one of the three prongs of Rule 23(b). Plaintiffs propose that the Court provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23 for the purpose of settlement only. The Parties agree that the Settlement Class may be certified under Rule 23(b)(3) for settlement purposes, which "permits class certification if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3) (emphasis original)). These are commonly referred to as the predominance and superiority requirements.

### 1. Common Issues of Law and Fact Predominate Over Individual Issues

The predominance requirement tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "[A] plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.'" *Beattie*, 511 F.3d at 654 (citation omitted).

One justification for the predominance requirement is that "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device." *Coleman*, 296 F.3d 443, 448 (6th Cir. 2002) (citing Fed. R. Civ. P. 23(b)(3) advisory committee notes).

Rule 23(b)(3) does not "mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Front-Loading Washers Prods. Liab. Litig*., 722 F.3d 838, 859 (6th Cir. 2013). Rather, for consumer defect cases, predominance is satisfied when "[e]vidence will either prove or disprove as to all class members whether the alleged design defects" caused the symptoms complained about. *Id.* The predominance requirement is thus "not defeated by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987); *Manners v. Am. Gen. Life Ins. Co.*,

15

No. CIV. A. 3-98-0266, 1999 WL 33581944, at *16 (M.D. Tenn. Aug. 11, 1999) ("This requirement is thus "not defeated by slight differences in class members' positions.").

Here, common issues predominate because they have a "'direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citation omitted)). All Class Members' claims arise out of the purchase of Class Vehicles that were manufactured and warrantied by Nissan. All Class Members allege a common, class-wide defect in their transmissions; i.e., the Alleged CVT Failures. All Class Members' claims are governed by the material terms of Nissan's uniform New Vehicle Limited Warranty. All Class Members allege consumer fraud claims based on the same alleged omissions of material fact, i.e., the failure to disclose the Alleged CVT Failures. The resolution of these common legal and factual issues would have a "direct impact on every class members' effort to establish liability[,]" meaning that common issues predominate. *Id.*

### 2. Class-wide Resolution Is Superior to Separate Individual Actions

In deciding superiority, the Court must consider at least some of the factors set forth in Rule 23(b)(3), including: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278, n. 19 (11th Cir. 2009). Here, the resolution of a single, nationwide class action is superior to tens of thousands of individual cases with damages that will "be too small for a separate action by each class member." *Carriuolo*, 823 F.3d at 989; *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 541 (S.D. Fla. 2015) ("the Court finds that a class action is a superior method of adjudication in this case. First, the number of class members here—in the hundreds or thousands—is too large for the prosecution of separate actions by each class member to be likely, practical, or desirable.")

This case presents no manageability concerns greater than any other settlement of a class action for damages; in fact, the availability of a direct notice mechanism to consumers through records of unique VINs makes manageability less of a concern here than in other consumer class actions. *Amchem Prod., Inc. v.*

16

*Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Manageability concerns are further reduced because all current owners and lessees will benefit automatically from the extended warranty without having to submit an individual claim. Qualifying former owners entitled to a voucher will be automatically notified without having to submit a claim. "Because common questions of law and fact predominate, class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency." *Carriuolo*, 823 F.3d at 989 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982)). Certification of this class action for settlement purposes is superior to alternative methods of adjudication.

      **D.    The Court Should Appoint the Proposed Class Counsel**

Under Federal Rule of Civil Procedure 23(g), "a court that certifies a class must appoint class counsel." In appointing class counsel, the court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The proposed Class Counsel regularly engage in consumer class action litigation and other complex litigation similar to the present action, and they have dedicated substantial resources to the prosecution of this action. Moreover, counsel have vigorously and competently represented the Class Members' interests in this action and will continue to fulfill their duties to the class. (*See, generally,* Deutsch Decl., Mason Decl., Padgett Decl., Finkelman Decl., Weiner Decl., and Bartlett Decl.)

      **E.    The Court Should Preliminarily Approve the Class Action Settlement**

This Circuit follows a three-step process for approving class action settlements: there must be preliminary approval of the proposed settlement; the class members must be provided notice of the proposed settlement; and, after a hearing, there must be final approval of the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) (*citing Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)) (additional citations omitted).

17

Traditionally, the standard for approval is "whether the proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Id.* (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)) (additional citations omitted).

Prior to giving final approval of the settlement, the Court has long considered the following factors: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by class members; and (7) the public interest. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 98 (W.D. Mich. 1998); *see Vukovich*, 720 F.2d at 922–23; *In re Dun*, 130 F.R.D. at 371. For purposes of granting preliminary approval, however, a court is not bound to consider all of these factors. *See Kizer v. Summit Partners, L.P.*, No. 1:11-CV-38, 2012 WL 1598066, at *8 (E.D. Tenn. May 7, 2012).

New amendments to Rule 23 took effect on December 1, 2018. These amendments clarify the minimum standards that guide a court's preliminary approval analysis.[5] Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii). Because Rule 23(e)(2) sets forth the factors that a court must consider when weighing final approval, it appears that courts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that those factors weigh in favor of final settlement approval.

The amended Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:

---

[5] Among other things, the new amendments set forth standards under Rule 23(e)(1)(B)(i–ii) that a district court must ensure are met prior to a grant of preliminary approval of a proposed settlement, and factors under Rule 23(e)(2) that a district court must now consider when evaluating whether to grant final approval of a proposed settlement. *See* Fed. R. Civ. P. 23(e).

18

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05MD1720MKBJO, 2019 WL 359981, at *13 (E.D.N.Y. Jan. 28, 2019); *In Re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510 at *4-*5 (N.D. Cal., Mar. 28, 2019) (for the purposes of preliminary approval, courts will consider the factors informing final approval as the new Rule 23 clarifies that preliminary approval should only be granted where the parties have "show[n] that the court will likely be able to ... approve the proposal under [the final approval factors in] Rule 23(e)(2).").

A court should base its preliminary approval of the proposed settlement agreement "upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Id.* (citing *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 369 (S.D. Ohio 1990)). The Court should determine that the settlement is not illegal or collusive. *Id.*, (citing *Vukovich*, 720 F.2d at 921); *In re Dun*, 130 F.R.D. at 369. The Court should also consider the "strong presumption in favor of settlement agreements because such agreements are a preferred means of dispute resolution." *U.S. v. State of Tennessee*, 256 F. Supp. 2d 768, 773 (W.D. Tenn. 2003); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 37 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

All of the relevant factors weigh in favor of the Settlement proposed here. The proposed Settlement is fair, adequate, and reasonable. Therefore, this Court should preliminarily approve the Settlement and certify a Settlement Class.

## 1. The Settlement is the Result of Serious, Arm's-Length, Informed Negotiations

"There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, unless there is evidence to the contrary." *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-4, 2015 WL 13650515, at *2 (E.D. Tenn. Jan. 16, 2015).

Here, the Parties participated in mediation with Mr. Hunter R. Hughes III, a respected class action

19

mediator. Mr. Hughes helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. A mediator's participation weighs considerably against any inference of a collusive settlement. *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) ("Another factor which supports the Court's conclusion on this point is that the negotiations which led to this settlement have included the participation of the Court appointed mediator[.]"). At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiffs were represented by Whitfield, Bryson & Mason, LLP; Berger & Montague.; Capstone Law APC; Heninger Garrison Davis, LLC; Shepherd, Finkelman, Miller & Shah, LLP; and Pearson, Simon & Warshaw, LLP. Plaintiffs' Counsel employ seasoned class action attorneys who regularly litigate automotive defect cases through certification and on the merits, and have considerable experience settling such cases. (*See* Declarations.) Nissan was represented by Drinker Biddle & Reath LLP, a nationally respected defense firm and other prominent counsel experienced in class action litigation.

Where, as here, the proposed settlement is the result of serious, arms'-length negotiations between the Parties after meaningful discovery and investigation, the settlement is entitled to a presumption of fairness. *See also* Manual for Complex Litigation, Third, § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

### 2. Adequate Representation by Class Representative and Class Counsel

The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class" and will vigorously represent the class. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). One of the purposes of assessing adequate representation is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc.*, 521 U.S. at 625. The Plaintiffs have no antagonistic interests. They each have sought out counsel, participated in the action, provided documents and assisted counsel and represented the class. Class Counsel have investigated the action, vigorously pursued discovery and negotiated discovery disputes, received and reviewed significant

discovery, worked with experts, obtained largely favorable decisions on the Motions to Dismiss in the *Falk* and *Knotts* cases, and then negotiated the Settlement. Moreover, Class Counsel are experienced auto defect class action practitioners. As such, the Court should deem the representation to be adequate at the final approval stage.

### 3. The Proposed Settlement Relief Treats Class Members Equitably and There Are No Obvious Deficiencies with the Settlement

The Settlement will provide all Class Members with significant benefits—i.e., the extended warranty, reimbursement for certain out-of-pocket expenses related to replacement of, or repairs to, the allegedly defective CVT transmissions in Class Vehicles for those who qualify, and vouchers toward the purchase or lease of new Nissan or Infiniti vehicles that will be made available to those who qualify.

The terms of the Settlement will automatically provide all current owners and lessees of Class Vehicles with the benefit of the extended warranty on their Class Vehicles, with no need for Class Members to submit a claim. Further, Class Members may submit claims for reimbursement of amounts paid for qualifying repairs to their transmissions; this relief extends to former owners and lessees who paid for qualifying transmission repairs while they owned or leased the Class Vehicles. As such, the Settlement treats class members equitably relative to each other. Additionally, the Settlement does not require Class Members to submit any individualized proof or a claim form to receive the extended warranty. All Class Members that do not opt to be excluded will be automatically credited with the extended warranty for their Class Vehicles, guaranteeing 100% participation after settlement administration.

### 4. The Relief Provided by The Settlement Is Reasonable and Adequate In View of the Complexity, Risks, Expense, and Likely Duration of the Litigation

The next factor requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The proposed Settlement in this case is well within the range of reasonableness that would merit judicial approval. *See Manners v. Am. Gen.*

21

*Life Ins. Co.*, No. CIV.A. 3-98-0266, 1999 WL 33581944, at *20 (M.D. Tenn. Aug. 11, 1999) ("This valuable relief falls well within the "range of reasonableness" required for settlement approval."); *In re Media Cent., Inc.*, 190 B.R. 316, 321 (E.D. Tenn. 1994) (the court "should canvass the issues and determine whether the proposed settlement falls within the range of reasonableness in the case, but without trying the case or otherwise deciding the issues of law and fact presented."). Indeed, this settlement provides to class members remedies similar to what they could otherwise expect to receive if they succeeded at trial but without the risk of delay or risks associated with trial or any subsequent appeal.

Furthermore, an extended warranty is a particularly fair form of compensation because it is scaled to the actual scope of the problem. Nissan has argued that the percentage of Class Vehicles affected by problems with their CVTs is very small considering the number of Class Vehicles in service and declining. If Nissan is right, it will pay relatively little under the extended warranty. If, by contrast, a large percentage of Class Vehicles require repair, then Nissan will pay an amount commensurately greater. This outcome precludes the risk of substantial overcompensation or under compensation and is just for both parties. It ensures that any customer whose Class Vehicle requires repair to the transmission assembly and/or ATCU within the extended warranty period will receive the repair free of charge. Indeed, unlike a mere cash settlement, Nissan's repair obligations under the extended warranty are unlimited. The benefits of extended warranties as settlement consideration have been recognized by numerous courts. *See Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *8 (C.D. Cal. July 7, 2015) (extended warranty was fair settlement consideration because it was directed at repairing the alleged harm and noting that other courts had approved extended warranties with age and mileage restrictions as settlement considerations); *Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 43900, at *8 (C.D. Cal. Jan. 30, 2014) (approving settlement agreement with an extended warranty and noting that "it is significant that the Settlement Agreement provides extended warranty coverage that exceeded the warranties provided" at the time of purchase).

Thus, an objective evaluation confirms that the benefits negotiated for the class are within the range of reasonableness. The relief offered by the Settlement is even more attractive when viewed against the recent difficulties by consumers pursuing automotive defect cases. For example, there is always a risk that a court would not find this action suitable for certification as a nationwide class or a multi-state class, and,

22

even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, and a class may be decertified at any time. *See, e.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) (Third Circuit reversed certification of consumer class action case involving BMW vehicles equipped with allegedly defective run flat tires). Moreover, the relief provided is substantially similar to another automotive defect settlement involving Nissan vehicles equipped with CVT transmissions that was approved in the United States District Court, Southern District of Florida. *See Batista v. Nissan North America, Inc.*, No. 1:14-cv-24728-RNS (S.D. Fla. June 29, 2019) (the district court found that the "benefits to the Settlement Class constitute fair value given in exchange for the release of the claims of the Settlement Class . . . [and that] the consideration to be provided under the Settlement is reasonable considering the facts and circumstances of [the] case, the types of claims and defenses asserted in the lawsuit, and the risks associated with the continued litigation of these claims.").

Particularly relevant to the reasonableness of the relief under the proposed settlement is that Nissan absent the settlement would continue to vigorously contest the merits of Class Members' claims, as well as the named Plaintiffs' ability to obtain class relief. Nissan denies that it engaged in any wrongful conduct. In addition, Nissan has interposed several defenses to the claims asserted including that the CVTs are not defective and that the level of problems experienced is small compared to the approximately 1.4 million Class Vehicles on the road; that Nissan had no knowledge of any alleged defect prior to sale and no intent to deceive its consumers; and that the Class Members suffered no compensable damages. Numerous legal issues would necessarily be subject to novel and extensive litigation, and certainly to appeal by one side or the other. Other defenses are fact-based and would be determined by the trier of fact if the case proceeded to trial. There is, in short, no guarantee that Plaintiffs would ultimately prevail on these legal and factual issues. Thus, the risk of losing must be considered in evaluating the adequacy of a proposed settlement.

The reality is that any case against a major automotive manufacturer alleging a defect in hundreds of thousands of vehicles—here, approximately 1.4 million—has the potential to take up significant amounts of the Court's and the parties' resources. In addition, if the case were to proceed, Plaintiffs would need to provide expert testimony to address the question of whether the alleged defect presents safety concerns, an expert to answer whether Class Vehicles' CVT components are more likely to malfunction than other

23

comparable parts, an expert on consumer expectations, and a damages expert—resulting in significant additional expenses.

Finally, if Plaintiffs had litigated this action through trial and ultimately obtained a judgment against Nissan, there is no guarantee that the judgment would be superior to the settlement obtained here. *See, e.g.*, *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (PA. 2011) (nearly 12 years after the commencement of the action—following, among other things, a contested motion for class certification, trial, post-trial motions, and appeal to the Superior Court—the Supreme Court of Pennsylvania ultimately affirmed an award of $600 for brake repairs for each Class Member which was based on the class vehicle having a useful life of 100,000 miles).

Throughout the course of settlement negotiations, the Parties considered factors such as the past and ongoing cost of the contentious litigation, the scope of relief that was being sought and that might be provided, the cost and benefit of such relief, the potential damages at issue, the risks of trying the matter, and the possibility of appeals of any judgment in the trial court—adding to the expense, delay and uncertainty of litigation. The Parties believe that the settlement is fair, reasonable, and adequate given the uncertainties of continued litigation and the value of the consideration given to current and former owners and lessees of Class Vehicles. The Court should reach the same conclusion, preliminarily certify the Settlement Class, and authorize distribution of notice in the manner contemplated by the Settlement.

### 5. Attorneys' Fees Are Reasonable

The next factor for the Court to consider is the reasonableness of any attorneys' fee award. Class Counsel will seek approval from the Court of their attorneys' fees not to exceed $6.5 million in fees and up to $100,000 in litigation expenses. This request is manifestly reasonable in light of the facts and circumstances of the cases, including, among other things, the results achieved, the skill and quality of work, the contingent nature of the fee, awards made in similar cases, and Plaintiffs' counsel's combined lodestar and costs and appropriate multiplier for contingent risk. The reasonableness of the fees sought will be separately briefed in detail when Class Counsel present their fee petition.

### 6. Class Members are Treated Equitably in the Settlement.

Consideration of the next Rule 23(e)(2) factor, that class members are treated equitably, "could

24

include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. As set forth above, the plan for distribution is fair and Class Members are being treated equitably.

### 7. The Proposed Settlement Notices are Fair and the Court Should Authorize Their Dissemination.

In any proceeding that is to be accorded finality, due process requires that interested parties be provided with notice reasonably calculated, under the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). That means the settlement notices must fairly apprise the class members of the terms of the proposed compromise and give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement. *Id*. Additionally, the notice must be designed so as to have a reasonable chance of reaching a substantial percentage of the class members. *Id.* at 318 (explaining notice must be reasonably calculated to reach interested parties).

Pursuant to the Settlement Agreement, the Parties ask the Court to appoint Kurtzman Carson Consultants, LLC, ("KCC") as the Notice Provider and Settlement Administrator. KCC is a nationally recognized class action notice and administration firm that has designed what the Parties believe to be an effective class notice plan for this case that will provide notice to the fullest extent practicable. (Declaration of Carla Peak.) Subject to Court approval, this Notice Plan will provide direct mail notice—the gold standard of notice—to former and current owners and lessees of Class Vehicles. (Settlement Agreement ¶¶ 70-72.) KCC will obtain Class Member VIN numbers through Nissan and using the VIN numbers will obtain address data for the Class Members from IHS/R.L. Polk or a similar provider. (*Id.* at ¶ 69.) The Parties anticipate that current residential addresses will be available for a very high percentage of Class Members, such that a single direct mail short form notice approved by the Court will reach the vast majority of members of the Settlement Class. Therefore, other forms of notice will not be needed to meet class action notice standards and satisfy due process requirements for notice to the Class Members.

Pursuant to the Notice Plan, there will be two forms of notice, a Long Form Notice and a Summary Notice. The Summary Notice (attached as Exhibit D to the Settlement Agreement) will inform Class Members of the basic terms of the settlement (including the benefits available, the release being provided and the fees being requested by Class Counsel), as well as their rights either to object to the settlement, or opt out of the settlement, or attend and participate in the Fairness Hearing. The Summary Notice will also refer class members to the detailed information on a Settlement Website as well as provide a toll-free telephone line maintained by the Settlement Administrator through which they can request information concerning the Settlement, including, if desired, a mailed copy of the Long Form Notice. Notice of the Settlement will be given to the Settlement Class not later than 150 days from the date of the Court's Preliminary Approval Order.

In addition to the Summary Notice, Class Members will be directed to a Long Form Notice (attached as Exhibit C to the Settlement Agreement) that will inform Class Members in detail as to the nature of the Actions, the litigation background, the terms of the Settlement Agreement (including the definition of the Settlement Class), the relief provided by the Settlement Agreement, how the Settlement will bind Class Members (including the scope of the release the Class will provide to Nissan and related companies), , Plaintiffs' request for fees and expenses, and how to obtain more information, including instructions on how to access the case docket via PACER or in person at any of the court's locations. It also describes the procedure for objecting to the Settlement; advises Class Members that they have the right to opt out of the Settlement and describes the consequences of opting out; and states the date and time of the final approval hearing, advising that the date may change and how to check the website or PACER for updated information.

The Settlement Administrator will also create and maintain a dedicated website for information about this Settlement ("Settlement Website"). On the Settlement Website, the Settlement Administrator will make available for download in portable document format (1) the Long Form Notice as approved by the Court and (2) the full Settlement Agreement and other documents and pleadings as agreed by the Parties. (Settlement Agreement ¶ 72.) The Settlement Administrator will also provide a link to the Settlement Website in the Summary Notice, maintain a toll-free number for Class Members to seek answers to

26

questions about the Settlement, and provide a reference to the toll-free number and website address in the Summary Notice. (*Id.*)

Accordingly, the content and method of dissemination of the proposed Notice fully comport with the requirements of due process and applicable case law and support a finding under amended Rule 23(e) that the Settlement is fair, reasonable and adequate. The Court should approve the proposed Notice and direct that it be distributed as agreed by the Parties.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully asks this Court to: (1) preliminarily certify the proposed Settlement Class: (2) preliminarily approve the Settlement submitted herein; (3) appoint Plaintiffs as Class Representatives and their counsel described above as Class Counsel; (4) approve the Notice to be issued to the Settlement Class and Notice plan related thereto; and (5) schedule a Fairness Hearing.

Dated; June 6, 2019                         Respectfully submitted,

/s/ Cody R. Padgett
Mark A. Ozzello
Tarek H. Zohdy
Cody R. Padgett
Trisha K. Monesi
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
Mark.Ozzello@capstonelawyers.com
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com
Trisha.Monesi@capstonelawyers.com

Caroline Ramsey Taylor
John C. Whitfield
WHITFIELD BRYSON & MASON, LLP
518 Monroe Street
Nashville, TN 37208
Telephone: (615) 921-6500
Facsimile: (615) 921-6501
caroline@wbmllp.com
john@wbmllp.com

27

Gary E. Mason
WHITFIELD BRYSON & MASON, LLP
5101 Wisconsin Ave., NW
Suite 305
Washington, D.C. 20016
T: (202) 429-2290
F: (202) 429-2294
gmason@wbmllp.com

Russell D. Paul
Lawrence Deutsch
Jeffrey L. Osterwise
BERGER & MONTAGUE, P.C
1622 Locust Street
Philadelphia, PA 19103-6305
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
rpaul@bm.net
ldeutsch@bm.net
josterwise@bm.net
Melissa S. Weiner*
Joseph C. Bourne*

PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

James C. Shah*
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Collingswood, NJ 08107-1909
Telephone: (610) 891-9880
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

28

Taylor C. Bartlett*
W. Lewis Garrison, Jr.*
Christopher B. Hood*
Heninger Garrison Davis LLC
2224 First Avenue North
Birmingham, AL 35203
(205) 326-3336 Telephone
(205) 380-8085 Facsimile
Taylor@hgdlawfirm.com
Lewis@hgdlawfirm.com

Of Counsel:
Troy King*
Law Offices of Troy King
7065 Fain Park Drive, Suite 203
Montgomery, Alabama 36117
(334) 215-4440 Telephone
(334) 215-4438 Facsimile
Troy@troykinglaw.com

*Attorneys for Plaintiffs and the Class and the Subclasses*

*\*motion for pro hac vice admission forthcoming*