IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHEYNNE NORMAN, *et al., individually and on behalf of a class of similarly situated individuals*,<br><br>  Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA,<br><br>  Defendant. | NO. 3:18-cv-00534<br><br>JUDGE RICHARDSON |
| PATRICIA WECKWERTH, *et al., individually and on behalf of a class of similarly situated individuals*,<br><br>  Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA,<br><br>  Defendant. | NO. 3:18-cv-00588<br><br>JUDGE RICHARDSON |
| CHRISTOPHER GANN, *et al., individually and on behalf of a class of similarly situated individuals*,<br><br>  Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA,<br><br>  Defendant. | NO. 3:18-cv-00966<br><br>JUDGE RICHARDSON |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Nissan North America, Inc. ("NNA")'s Motion for Partial Reconsideration of January 24, 2022 Order, which was filed in all of the three above-captioned matters (*Norman, et al. v. Nissan North America, Inc*. (Case No. 3:18-cv-00534), *Gann, et al. v. Nissan North America, Inc*. (Case No. 3:18-cv-00966), and *Weckwerth, et al. v. Nissan North America, Inc*. (Case No. 3:18-cv-00588)). ("Motion").[1]

# BACKGROUND

The full factual background is sufficiently recited in the Court's Memorandum Opinion accompanying its denial of Defendant's Motion to Enforce Judgment. (Doc. No. 145 at 2–7). This case involves claims brought by a nationwide class of owners and lessees of Nissan vehicles equipped with a Continuously Variable Transmission ("CVT"), which the class alleges is defective. (Doc. No. 70 at 7).[2] On March 10, 2020, the Court entered, in each of the three actions, a Final Approval Order and Judgment, whereby the Court approved a class settlement and dismissed with prejudice claims brought by the putative class. (Doc. No. 123).

Following final approval, AUL, a third-party company that sells vehicle-service contracts for which customers pay AUL a fee in order for AUL to cover certain repair costs customers may incur after expiration of their manufacturer's warranty, sued NNA in California state court,

---

[1] For the sake of efficiency, all references herein to document numbers for filings refer to those in *Norman, et al. v. Nissan North America, Inc*. (Case No. 3:18-cv-00534). For each such filing referred to herein, a substantively identical filing was made in each of the other two cases. Along the same lines, the Court herein will refer to Defendant's filings in the singular even though three substantively identical filings were made.

[2] The Court notes that when citing to a page in a document filed by Defendant, it endeavors herein to cite to the page number ("Page ___ of ___") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

bringing claims regarding the same CVT defect. (*A.U.L. Corp. v. Nissan North America, Inc.*, Case No. 20CV000362 (the "California Suit")) (see Complaint, Doc. No. 127-1). NNA thereafter filed the above-referenced Motion to Enforce Judgment in this Court pursuant to the directive of the judge presiding over the California Suit (Judge Victoria Wood), through which NNA asked the Court to determine "whether the California Suit is barred in whole or part by the [Settlement Agreement, Doc. No. 71-2,] this Court approved [at Doc. No. 123]." (Doc. No. 126 at 6). The Court denied NNA's Motion to Enforce Judgment, finding that "[b]ecause AUL is not a successor or assign of any Class Members in this action, and because AUL lacks privity to any Class Members, no exception to the Anti-Injunction Act gives this Court authority pursuant to the All Writs' Act to enjoin the California Suit. AUL has the right to bring its claims in the California Suit regardless of this settled federal class action, and this Court cannot and should not interfere with AUL's right to do so." (Doc. No. 145 at 18).

In the present Motion, Defendant asks the Court to reconsider three of the Court's rulings specifically related to AUL's subrogation claim, namely its rulings that "(1) the Anti-Injunction Act ('AIA') applies to the Motions to Enforce; (2) in pursuing its subrogation claim, AUL is not a 'successor' to the Class Members' claims; and (3) the AIA prevents this Court from interfering with AUL's litigation of the subrogation claim in the Napa County suit." (Doc. No. 148 at 6).

**LEGAL STANDARD GOVERNING A MOTION FOR RECONSIDERATION[3]**

Defendant does not bring the Motion pursuant to a particular Rule of Civil Procedure. Instead, Defendant cites (in its Memorandum in Support of the Motion) to the undersigned's prior

---

[3] Though Defendant's Motion is styled as a motion for reconsideration, Defendant does at one point refer to its Motion as a "motion to amend." Because, as described further below, courts apply the standard for motion to amend to motions for reconsideration, the Court need not spend time examining whether the Motion is, technically speaking, a motion for reconsideration or a Rule 59(e) motion to alter or amend a judgment.

opinion in *Hanna v. Marriott Hotel Servs., Inc.*, No. 18-cv-0325, 2019 WL 7482144, at *1 (M.D. Tenn. Mar. 18, 2019) (Richardson, J.) for the notion that "motions for reconsideration are not favored, do not represent an opportunity merely to reargue points already decided, and must meet a high standard." (Doc. No. 148 at 6). Defendant goes on to note (correctly) that, as discussed below, at least one of six grounds must apply for a movant to meet this "high standard" such that a court will grant a motion for reconsideration.

The kinds of arguments that can be raised on a motion for reconsideration are limited. *Hanna*, 2019 WL 7482144, at *1. A motion for reconsideration should not provide the parties with an opportunity for a proverbial second bite at the apple. *Id.* (citing *Chad Youth Enhancement Center, Inc. v. Colony Nat'l Ins. Co.*, No. 3:09-0545, 2010 WL 2253538, at *1 (M.D. Tenn. June 1, 2010)). A motion for reconsideration is not an opportunity to merely re-argue a case. *See id.*

Nor is a motion for reconsideration properly grounded on a request that a court rethink a decision already made. *Id.* District courts reviewing motions to reconsider interlocutory rulings "at a minimum" require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available. *Id.* The Federal Rules of Civil Procedure do not provide for a "motion to reconsider" (or a "motion for consideration of") an order, whether interlocutory or final. Nevertheless, courts customarily have been willing to entertain motions titled this way.

The primary standard for such motions was essentially borrowed from the standard for motions under Fed. R. Civ. P. 59(e) to alter or amend a judgment. More specifically, a motion to reconsider generally must be based on one of the grounds available for motions to alter or amend judgment or upon a showing that the court clearly overlooked material facts or controlling law that were presented by the movant in its prior motion and that would result in a different disposition.

*Id*. The Court may grant a motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* (citing *United States v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n.*, 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017)). As indicated above, a motion to reconsider may be based on these four grounds, or upon essentially a fifth or sixth ground: (5) that the court clearly overlooked material facts (or, in the case of an order on a Rule 12(b) motion, factual allegations from the complaint) that were presented by the movant in its prior motion and that would result in a different disposition; or (6) that the court clearly overlooked controlling law that was presented by the movant in its prior motion and that would result in a different disposition.

The decision whether to deny a motion for reconsideration, including a motion for reconsideration of an order disposing of some but not all of the plaintiff's claim, is a matter within the discretion of the district judge. See *Tolbert v. Potter*, 206 F. App'x 416, 417 (6th Cir. 2006); *Lommen v. McIntyre*, 125 F. App'x 655, 658 (6th Cir. 2005) (noting that the Sixth Circuit "review[s] the district court's denial of the motion for reconsideration for an abuse of discretion").

## DISCUSSION

Defendant asserts that the first, fifth, and sixth grounds "collectively capture the grounds for the Motion," *i.e.*, that there was a "clear error of law," that the Court "clearly overlooked material facts . . . that were presented by the movant in its prior motion that would result in a different disposition," and that the Court "clearly overlooked controlling law that was presented by the movant in its prior motion and that would result in a different disposition." (Doc. No. 148 at 10). The Court will consider each of these three grounds in turn.

1. <u>Clear error of law</u>

The Motion does not assert or establish any error that is "clear." Instead, Defendant argues that the Court should have come out differently on an issue that was already briefed by the parties: whether the final approval order in this matter (Doc. No. 123) precludes the California Suit due to this Court's retained jurisdiction to enforce the federal Class Settlement.

As the undersigned has previously noted:

> If [a party] thinks the Court erred, [that party] may at some point take this up with the Sixth Circuit and seek to show that court that this Court erred, but the Court does not discern any even arguably *clear* error that would occasion *this Court* to revisit its own opinion. In short, a district court may or may not be right. But with few if any exceptions, a district court is quite busy and, absent a specific one of the four reasons to do so, should not be asked to revisit a motion that it has already addressed in some detail and resolved. [A party] has every right to disagree with the Court's decision and be frustrated by it, but she does not have the right to pull the Court's attention away from its hundreds of other cases merely because she disagrees with the Court's decision. A motion for reconsideration is not a venue to see whether the Court will conclude that perhaps on balance it should have gone the other way the first time

*O'Connor v. Lampo Grp., LLC*, No. 3:20-CV-00628, 2021 WL 4942869, at *2 (M.D. Tenn. Oct. 22, 2021) (Richardson, J.).

Defendant contends that the parties did not already have the opportunity to argue "whether Anti-Injunction Act applies or, if it does, whether an exception to the Act also applies." (Doc. No. 148 at 10). The fact that Defendant failed to argue the applicable law in connection with its Motion to Enforce Judgment is no reason for this Court now to reconsider its prior ruling. Defendant now argues that the Anti-Injunction Act is not implicated at all by the Motion to Enforce Judgment because there is no "conflict" between competing courts and that therefore it was not required to establish one of the three enumerated exceptions to the Anti-Injunction Act. (Doc. No. 148 at 11–12). Specifically, Defendant cites *Leiter Mins., Inc. v. United States*, 352 U.S. 220, 225 (1957) to say that the central purpose of the Anti-Injunction Act is "to prevent conflict between federal and

state courts." Defendant does not define what it means by "conflict," nor does it cite any case law that defines the term or that imposes some sort of particular "conflict requirement" in order for the Act to apply. It is one thing to say that a particular law or legal device has a particular purpose, but it is quite another to frame the applicability of the law or legal device in terms of that purpose.[4] Defendant does the latter without explaining why so doing is appropriate.

Even if the applicable test for whether the California Suit impedes this Court's jurisdiction to enforce the Settlement Agreement was tied to the existence of a "conflict," the Court finds that there is an actual conflict here (and that it is Defendant who insisted there was such a conflict in the first place). True, Judge Wood issued a temporary stay of the California Suit. But that temporary stay did not resolve the conflict between the courts raised by the Motion to Enforce Judgment—the conflict raised by Defendant contending that this Court is the only court that can hear AUL's claims (and that the California Suit thus frustrates this Court's judgments). The very reason that Judge Wood ordered that Defendant file the Motion to Enforce Judgment was to resolve

---

[4] For example, it is typically said that the *purpose* of a preliminary injunction is to preserve the status quo (temporarily), and yet the test for issuing a TRO is not framed at all in terms of whether a TRO is helpful or necessary for preserving the status quo. *See, e.g.*, *PBV, Inc. v. Rossotti*, 178 F.3d 1295 (6th Cir. 1999) ("The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits can be held. In determining whether to grant a preliminary injunction, the district court must consider: (1) the likelihood that the plaintiff will succeed on the merits; (2) whether the party seeking the injunction will otherwise suffer irreparable harm; (3) the probability that granting the injunction will cause substantial harm to others, and (4) whether the public interest would be advanced by the injunction." (citation omitted)). That is not to say that the concept of "preserving the status quo" cannot be considered in applying what *is* the applicable test (the four-factor test noted in *PBV, Inc.*); such concept could bear on one or more factors that govern whether a preliminary injunction should be issued. But a plaintiff asserting that "preserving the status quo" supports the granting of a preliminary injunction needs not merely to recount that the *purpose* of a TRO is to preserve the status quo, but to explain why preserving the status quo would strengthen the plaintiff's position on one or more factors that comprise the applicable test. In other words, the purpose of a preliminary is to preserve the status quo, but a court cannot issue a preliminary injunction *because* it believes so doing would preserve the status quo; instead, as *PBV, Inc.* indicates, the court must apply the applicable four-factor test, which notably contains no language regarding preserving the status quo.

this conflict between the courts. Just because Judge Wood sought to have the conflict resolved in an orderly fashion by *temporarily* staying the California Suit and deferring to this Court's judgment pursuant to the Final Approval Order does not mean that this Court may *permanently* enjoin the California Suit pursuant to the All Writs' Act without an applicable exception to the Anti-Injunction Act.

The Court is not convinced by Defendant's claimed ignorance that the Anti-Injunction Act applies here (and that Defendant had no way of knowing that in its prior Motion to Enforce Judgment, it should have squarely addressed the exceptions to the Anti-Injunction Act and convinced the Court that at least one exception applied). In fact, in Defendant's very own brief, Defendant uses language reflecting the "relitigation" exception to the Anti-Injunction Act. (*See, e.g.*, Doc. No. 126 at 8, 19 ("[T]o protect and enforce those Judgments, the Court should confirm that AUL is enjoined from" bringing the California Suit and "AUL is attempting to frustrate the injunctions in the Court's Final Approval Orders, as well as the terms of the Settlement Agreements[.]")). Defendant's Memorandum in Support of the Motion also quotes *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 843-44 (6th Cir. 2009) for the proposition that the All Writs Act "empowers federal courts to '"issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"'" (Doc. No. 148 at 19) (quoting *Lorillard*, 589 F.3d at 843–44 (quoting the All Writs Act)). But *Lorillard*, in the very next sentence, makes clear that "[w]hen a federal court enjoins a state-court proceeding, however, the Anti–Injunction Act limits the scope of the federal court's authority." *Id*. And that is exactly what Defendant asked of this Court in the Motion to Enforce Judgment: to "permanently enjoin AUL from asserting [its] claims in any other litigation," namely, in the California Suit. (Doc. No. 126 at 23). To determine whether it could do so as requested by Defendant, as *Lorillard*

makes clear, the Court needed to determine whether it was prevented from doing so by some limitation to its authority imposed by the Anti-Injunction Act. The fact that Defendant failed to identify the Anti-Injunction Act as a crucial potential obstacle to the granting of its Motion to Enforce Judgment does not warrant reconsideration of the Court's ruling and an opportunity for Defendant to now elaborate on its prior arguments.

Defendant also argues that the Court improperly took an "all-or-nothing" approach to the Motion to Enforce Judgment, whereby the Court denied the Motion to Enforce Judgment in its entirety because at least some of AUL's claims were non-derivative in nature. (Doc. No. 148 at 17 ("The Opinion erred, however, by dismissing that clear identity of interest under the subrogation claim because AUL's other, non-subrogation claims were not necessarily derivative."))[5]. In so conducting its analysis on an "all-or-nothing" basis, the Court did not commit a "clear error of law." Defendant's Motion to Enforce Judgment itself sought resolution on an "all-or-nothing" basis and did not ask the Court to grant the Motion as to some, but not all, of AUL's claims. Specifically, in the Memorandum in Support of the Motion to Enforce Judgment, Defendant requests an order: "(1) confirming that the injunctions it issued in the Final Approval Orders for the three class actions and the terms of the class Settlement Agreements preclude AUL from seeking recovery for repair costs related to the 709 Class Members in the California litigation, or in any other forum; and (2) if the Court believes that a specific additional injunction against AUL is warranted—or should circumstances require—the Court should permanently enjoin AUL from asserting such claims in any other litigation." (Doc. No. 126 at 23). Defendant, which was master

---

[5] Defendant "does not presently contest" that AUL lacks privity with the Class Members regarding its other, non-subrogation claims, and thus it would appear that Defendant too would not contest that the California state court maintains proper jurisdiction unimpeded by the federal class settlement over these claims. (*Id.* at 14).

of its own motion, *Mitchell Transp. Co. v. Green*, 120 F. 49, 58 (6th Cir. 1903), did not ask the Court to consider enjoining AUL's pursuit of at least one or more claims even if it refused to enjoin AUL from pursuing all of them; it sought to have this Court enjoin AUL's pursuit of *all* claims and *all* efforts to "seek[ ] recovery for repair costs related to the 709 Class members in the California litigation." (Doc. No. 126 at 23).

As for the two cases cited by Defendant, which are out-of-circuit and unpublished and thus about as non-precedential for this court as cases can possibly get, they resoundingly fail to establish a clear error of law by this Court, even setting aside the question of how a court can commit a "clear" error of law merely by acting in a manner inconsistent with non-binding authority. This failure is suggested by the very proposition for which Defendant cites the two cases: "courts routinely conduct claim-specific assessments under the Anti-Injunction Act." (Doc. No. 148 at 17). To say that courts have "routinely [done something]" is not to say that a court *must* do the same thing and that if it does not, it has committed error (let alone *clear* error). Defendant identifies and summarizes (in pertinent part) these cases as follows: "*In re Lynx Prod. Servs.*, No. 13-5067, 2014 WL 1378869, at *4 (E.D. La. Apr. 8, 2014) (finding that Anti-Injunction Act allowed the court to stay claims in state law action subject to re-litigation exception but forbade the court from enjoining claims not previously litigated); *Al-Sharif v. EPES Transp. Sys., Inc.*, No. CV 111-037, 2012 WL 529968, at *2 (S.D. Ga. Feb. 17, 2012) (emphasizing that the state court action alleged only claims barred from injunction and suggesting that individual claims would have been enjoined if necessary)." (Doc. No. 148 at 17–18). And as Defendant's own parenthetical summaries indicate, respectively: (i) *Lynx Prod. Servs.* did not state that (or for that matter, deal at all with whether) a court generally is *required* to stay some claims (those not subject to the Anti-Injunction Act) even though it was required by the Anti-Injunction Act *not* to stay others (obviously, those

subject to the Anti-Injunction Act);[6] and (ii) *Al-Sharif* did not hold, or even suggest, that a court is *required* to enjoin some claims even though it was required by the Anti-Injunction Act to stay others.[7]

So although the Court does not doubt that it could *choose* to apply (or not apply) the Anti-Injunction Act on a claim-specific basis, Defendant has not shown that the Court was *required* to apply (or, to put it more aptly, *not* apply) it on a claim-specific basis—especially where, as here, the Court was not even asked to do so. Thus, Defendant has failed to show that the Court's "all-or-nothing" resolution of Defendant's Motion to Enforce Judgment did not constitute a clear error of law.[8]

Defendant has failed to demonstrate a clear error of law. Thus, the Court finds that the Motion cannot be granted on this particular ground.

2. Overlooked material facts

A motion to reconsider may be granted where the movant shows that "the court clearly overlooked . . . controlling law that was presented by the movant in its prior motion and that would

---

[6] The court in *In re Lynx Prod Servs.* did find that it was required to stay some claims, but not by virtue of the Anti-Injunction Act. Instead, it was a particular federal doctrine (the so-called *Cushing* Chronology) not involved in the instant case that required claims not subject to the Anti-Injunction Act to be stayed. 2014 WL 1378868, at *4. *In re Lynx Prod Servs.* thus does not indicate that the subset of claims not subject to the Anti-Injunction Act must be stayed when (as in the present case) no federal law or legal doctrine requires such claims to be stayed.

[7] The court in *Al-Sharif* did note that the plaintiff's amended complaint must be dismissed since it "only contains claims for injunctive relief that are barred by the Anti–Injunction Act[.]" 2012 WL 529968, at *2. But the Court is far from sure that the court thereby "suggest[ed] that if plaintiff did have claims not barred by the Anti-Injunction Act," then such claims "would have been enjoined if necessary." (Doc. No. 148 at 17–18). But even if *Al-Sharif* did make such a suggestion, *Al-Sharif* is of no help to Defendant, for the reasons discussed herein.

[8] Nothing herein is meant to suggest that this Court or the court presiding over the California action could not properly conclude, and should not be asked by Defendant to conclude, that under the Settlement Agreement AUL should be enjoined from proceeding with its subrogation claim *in particular* if Defendant were in fact *to ask for this more limited relief.*

result in a different disposition." *Hanna*, 2019 WL 7482144, at *1. Defendant contends that the Motion should be granted on this ground. However, Defendant does not identify any material facts overlooked by the Court. Indeed, as far as the Court can see, Defendant does not even make any real attempt to do so. The Court thus finds that this is not a cognizable ground for granting the Motion.

3. <u>Overlooked controlling law</u>

A motion to reconsider may be granted where the movant shows that "the court clearly overlooked . . . controlling law that was presented by the movant in its prior motion and that would result in a different disposition." *Hanna*, 2019 WL 7482144, at *1. Defendant contends that the Motion should be granted on this ground, but Defendant does not articulate what controlling law was presented by Defendant in the Motion to Enforce Judgment that the Court overlooked. And the Court on its own cannot construe any particular law cited by Defendant in the Motion to fall into the category of "controlling but overlooked."

In the Motion and supporting memorandum, Defendant goes on at some length to present an argument that the Court got it wrong the first time around. As indicated above, Defendant is entitled to its opinion on that and to present it to the Court of Appeals as purported grounds for reversal. But that does not mean that Defendant has identified (or even tried to identify) any particular controlling law that the Court "clearly" overlooked. It is one thing to say that all things considered (and considering various cases that are not even binding on this Court), the Court should have come out the other way; it is quite another to say that it is "clear[ ]" that the Court "overlooked" law that is "controlling" (surely meaning precedential and at least close to being squarely applicable). At best, Defendant has established the former (although the Court does not believes that it has). But Defendant simply has not established the latter, or even made any real

attempt specifically to explain how it has established the latter. The Court must therefore conclude that this is not a cognizable ground for granting the Motion.

## **CONCLUSION**

Because Defendant has not shown any proper grounds for granting its Motion for Reconsideration, the Court reaffirms its prior decision on the Motion to Enforce Judgment. The Court declines to entertain Defendant's request merely to re-argue a motion (including by addressing for the first time a matter, the Anti-Injunction Act, that Defendant previously should have addressed) that the Court has already considered and addressed in some detail in rendering its prior decision. Accordingly, the Court holds that Defendants' Motion is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE